FRASER v. McCONWAY & TORLEY CO.

(Circuit Court, D. Pennsylvania. August 26, 1897.)

1. CONSTITUTIONAL LAW—RIGHTS OF RESIDENT FOREIGNER—TAX ON LABORER —PENNSYLVANIA LAW.

The Pennsylvania law of June 5, 1897, imposing on every employer of foreign-born unnaturalized male persons over 21 years of age a tax of three cents a day for each day that each of such persons may be employed, and authorizing the deduction of that sum from the wages of such employés, deprives the latter of the equal protection of the law, in violation of the fourteenth amendment to the constitution of the United States.

2. SAME—CITIZENS AND FOREIGNERS—FOURTEENTH AMENDMENT.

The equal protection of the laws declared by the fourteenth amendment to the constitution, and enforced by the laws of the United States, is not confined to citizens, but secures to every person within the jurisdiction of the state exemption from any burdens or charges except such as are equally laid upon all others under like circumstances.

This was a suit by John Fraser, a subject of the queen of Great Britain, against the McConway & Torley Company, a corporation of

the state of Pennsylvania.    The cause was heard on demurrer to the bill of complaint.

Knox & Reed, for complainant.
Thos. Patterson and N. S. Williams, for defendant.

ACHESON, Circuit Judge.    The first section of an act of assembly of the state of Pennsylvania approved the 15th day of June, 1897, provides:

"That all persons, firms, associations, or corporations employing one. or more foreign born unnaturalized male persons over twenty-one years of age within this commonwealth, shall be and are hereby taxed at the rate of three cents per day for each day each of such foreign born unnaturalized male persons may be employed, which tax shall be paid into the respective county treasuries; one-half of which tax to be distributed among the respective school districts of each county, in proportion to the number of schools in said districts; the other half of said tax shall be used by the proper county authorities for defraying the general expenses of county government."

It is further provided by the act:

"That all persons, firms, associations, and corporations shall have the right to deduct the amount of the tax provided- for in this act from the wages of any and all employees, for the use of the proper county and school district as aforesaid."

As the employer is authorized by the act to deduct from the wages of the employé the prescribed tax, it is quite clear that the tax is upon the employé, and not upon the employer.    Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 239, 10 Sup. Ct. 533.

The court is here called upon to consider whether these provisions of this act of assembly are in conflict with the constitution or laws of the United States.    The fourteenth amendment to the constitution of the United States declares:

"Nor shall any state deprive any person of life, liberty, or property, without due process of law;  nor deny to any person within its jurisdiction the equal protection of the laws."

The general purpose and scope of these constitutional provisions were thus stated by Mr. Justice Field in delivering the opinion of the supreme court of the United States in Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 359:

"The fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights;  that all persons should be equally entitled to pursue their happiness, and acquire and enjoy property;  that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts;  that no impediment should be interposed. to the pursuits of any one, except as applied to the same pursuits by others under like circumstances;  that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses."

Congress has enforced the above-quoted provisions of the fourteenth amendment by legislation embodied in sections 1977 and 1979 of the Revised Statutes. The former of these sections enacts:

"All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

It will be perceived that this statute, following in this regard the constitutional provisions themselves, embraces within its protection not citizens merely, but all "persons" within the jurisdiction of the United States. The question of the extent of the application of these constitutional provisions with respect to persons was before the supreme court in Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, and it was there decided that the guaranties of protection contained in the fourteenth amendment to the constitution embraced subjects of the emperor of China residing in the state of California. Mr. Justice Matthews, in delivering the opinion of the supreme court there, said:

"The fourteenth amendment to the constitution is not confined to the protection of citizens. It says: 'Nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' These provisions are universal in their application to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws."

There can be no doubt that the fourteenth amendment embraces the case of the present plaintiff, who, although a British subject, is, and since about April 27, 1893, has been, a resident of the state of Pennsylvania, and whose right to reside within the United States is secured to him by treaty between the United States and Great Britain.

Can the tax laid by the Pennsylvania act of June 15, 1897, be sustained consistently with the principles enunciated by the supreme court of the United States in the cases which have arisen under the fourteenth amendment? I think not. This tax, as we have seen, is imposed "at the rate of three cents per day for each day each of such foreign-born unnaturalized male persons may be employed." The tax is of an unusual character, and is directed against and confined to a particular class of persons. Evidently the act is intended to hinder the employment of foreign-born unnaturalized male persons over 21 years of age. The act is hostile to and discriminates against such persons. It interposes to the pursuit by them of their lawful avocations obstacles to which others, under like circumstances, are not subjected. It imposes upon these persons burdens which are not laid upon others in the same calling and condition. The tax is an arbitrary deduction from the daily wages of a particular class of persons. Now, the equal protection of the laws declared by the fourteenth amendment to the constitution secures to each person within the jurisdiction of a state exemption from any burdens or charges other than such as are equally laid upon all others under like

circumstances. The ·Railroad Tax Cases, 13 Fed. 722, 733. The court there, in discussing the prohibitions of the amendment, said:

"Unequal exactions in every form, or· under any pretense, are absolutely forbidden; and, of course, unequal taxation, for it is in that form that oppressive burdens are usually laid."

It is idle to suggest that the case in hand is one of proper legislative classification. A valid classification for the purposes of taxation must have a just and reasonable basis, which is lacking here. Railroad Co. v. Ellis, 165 U. S. 150, 165, 17 Sup. Ct. 261. Mr. Justice Brewer, in delivering the opinion of the court there, said:

"It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment. and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground,—some difference which bears a just and proper relation to the attempted classification,—and is not a mere arbitrary selection."

I am of opinion that the act of assembly of the state of Pennsylvania of June 15, 1897, here in question, is in conflict with the constitution and laws of the United States, and cannot be sustained. The demurrer to the bill of complaint is therefore overruled.